No. 1110.

### T. C. ANDERSON vs. HIS CREDITORS.

33 1155<br>f122 601

On the trial of Oppositions to the application of a debtor for a respite, the creditors cannot propound interrogatories to him, such as, whether he had disposed of his property during the pendency of the respite proceedings, when the Oppositions contained no such charges, but only averred that he had not placed all his property on his schedule.

*It seems* that it is no good ground of opposition to the application for a respite, that the debtor placed on his schedule parties who were not his creditors, because, by so doing, he cannot prejudice the real creditors, and any of the latter, though not on the schedule, can, by making oath, vote at the meeting

In the absence of charges and proof of dereliction of duty, the notary appointed by the
Court to hold the meeting of creditors, had the power, in the exercise of his sound discre-
tion, to adjourn the meeting.

The majority in number and in amount, required for a forced respite, is that of creditors,
whether placed on the bilan or not, who have appeared at the meeting, taken the oath
prescribed by law, proved their claims and voted for the respite.

The respite and insolvency laws are perfectly distinct. The former rest upon the apparent
solvency of the debtor, and are not suspended or affected by the general bankrupt law of
the United States.

APPEAL from the Thirteenth Judicial District Court, parish of St.
Landry. *Hudspeth, J.*

*John E. King & Veazie* for Plaintiff and Appellee.

*F. F. Perrodin* and *H. L. Garland* for Opponents and Appellants.

The opinion of the Court was delivered by

BERMUDEZ, C. J.   This case was remanded last term, for the trial of
oppositions made to the homologation of the deliberations of the credi-
tors of the plaintiff, on his application for a respite.   32 An. 892.

. The oppositions were tried and dismissed.   The deliberations were
homologated and the respite asked was granted.   From the judgment
thus rendered, the opponents have appealed.   Their grounds of com-
plaint are substantially:

1st. That the plaintiff has not filed a complete and descriptive sched-
ule of his assets and liabilities.

2d. That many who are represented by him as his creditors are not
such, or, if such, are so for much smaller amounts ; that certain named
persons were not his creditors at all.

3d. That, even then, said parties had no right to vote at the time
they did, which was not that fixed by the court for the holding of the
meeting of the creditors, but that appointed by the notary arbitrarily
and illegally.

4th. That the creditors who voted on the day assigned by the court
refused the respite ; that the creditors placed on the bilan and who did
not appear at the meeting, should have been counted as having voted
against the respite.

5th. That, in any event, the proceedings and judgment are unwar-
ranted by law, because carried on under laws which, forming part of the
State insolvent system, had been abrogated by the uniform bankruptcy
laws adopted by Congress, and were not in force at the time and while
the proceedings were inaugurated and consummated.

On the trial, the opponents propounded interrogatories to the plain-
tiff, for the double purpose of eliciting evidence to substantiate the alle-
gation that he had not stated all his property, and to show that he
was disposing of his property during the pendency of the respite pro-
ceedings.   On objection to the latter object, the court ruled, that the

interrogatories should not be put, for the reason, that the oppositions incorporated no averment to justify the inquiry. To the ruling a bill was reserved, which appellants insist that we shall review. In so doing, we have only to say, that the ruling was perfectly correct, as in full accord with the elementary rule of evidence, which excludes evidence offered to prove matters not alleged. Particularly is such the rule, in cases of this description, where the contentions of parties are to be conducted and controlled according to the strict requirements of the law of pleading.

Having thus cleared the case for an investigation of it on its merits, we will now proceed to do so.

1st. The opponents have preferred no charge of fraudulent concealment on the part of the applicant for a respite.

The law certainly intends and requires that parties seeking that relief should be actuated by the strictest good faith, and should deal with the utmost fairness with the creditors whose indulgence they seek, by furnishing to them all proper information within their control, concerning their rights and obligations, so as to enable them to determine whether it is or not their interest to grant or refuse the extension sought. The law may decline its protection where the embarrassed debtor knowingly withholds, or intentionally refuses that information, when in his power ; but it never contemplated doing so, when mistakes or errors have been involuntarily committed, and when the debtor, of his own motion, or on interrogatories, satisfies inquiries on the subject.

The record shows how the imperfections charged originated and how certain creditors were not included on the bilan. We are satisfied that the matter was fully elucidated below, and that the irregularities denounced by the opponents have been remedied and can no longer form any serious ground of complaint.

2d. It is immaterial whom the plaintiff placed on his schedule as his creditors, as, by doing so, he can prejudice no real creditor, whether put thereon or omitted therefrom. Parties carried by him on the bilan are recognized by him as his creditors, but are not made such by this mere act so as to conclude other creditors, or to give them any voice in the proceeding, unless they previously prove their claim by their personal oath. The insertion of their name creates a sort of *prima facie* presumption of their rights, which may fortify their sworn attestation and other proof which they may adduce in their own favor. It is not until after a litigation has arisen, putting the matter at issue, and has been determined, that it can be ascertained who is and who is not a creditor. It may well be, however, that parties pretending to be creditors may, by their oath, pronounce themselves such, in order to entitle them to a vote at the meeting, when they are, *in truth,* no such creditors. In such

cases, in a proper proceeding,—in the shape of an opposition to the homologation of the creditors,—the court would determine upon the right of the parties *to vote*, but would not assume, however, in all cases, to pass finally on the correctness of their claims for classification, which can be definitively adjudicated upon only when issues properly formed are presented for determination.

We have looked into the record on this subject, and find that *eight* persons, claiming to represent $13,160, have voted *against*, while *ten* others, sufficiently proved to be creditors, representing upwards of $30,000, have, on the three different days, voted *in favor* of the respite.

In making the computation, we leave out of view the question, whether the Citizens' Bank, which had at first voted *against*, and which subsequently intervened, praying to be permitted to vote *for* the respite, can be allowed to do so. It is clear that, if the bank could not change its vote, it could withdraw it before homologation. Even if it could not, the vote against the respite would be that of *nine* creditors representing $17,106 *against*, and *ten* creditors, representing more than $30,670, *for* the respite. Conceding that the five children of the applicant whose claims, for $6500, are assailed, are not creditors, the result would remain unchanged, as they are not included among the ten assenting creditors.

3d. We think that, in the absence of any charge and proof of gross dereliction of duty, detrimental to the interest of the creditors, the notary appointed by the court to hold the meeting of the creditors, had the right, in the exercise of a sound discretion, expressly vested in him by law, R. C. C. 3089, 3090, to adjourn the meeting, as was done in this case.

On the day assigned by the court, which was the 28th of June, 1879, a Saturday, he adjourned after receiving the votes of thirteen appearers, at five o'clock P. M., to Monday, the 30th, concluding his *procès verbal*, by saying, that he so adjourned upon advice, that other creditors were unable to attend on that day, who would do so on Monday. On that day, he received the votes of three creditors, and stating that, it being sunset, and the receiving of the declarations and votes not being completed, he adjourned the meeting to the day following, when he received the votes of eight persons, claiming to be creditors, and closed his *procès verbal* with a recapitulation, showing that nine creditors, representing $19,941, had voted *against*, while fifteen others, representing $37,676, had voted *for* the respite.

4th. Considering that the notary had a right to adjourn and to hold the meeting as he did, it is unnecessary to pass upon the question raised as to the creditors who voted, on the 28th of June, *against* the respite.

The proposition that the creditors placed on the bilan, who did not prove their claims and vote at the meeting, should be counted as having voted against the respite, is untenable. The authorities cited in support, in 3 N. S. 446, 504, 8 L. 467, 12 An. 520, 14 An. 30, cannot be successfully relied upon.

The two first decisions were made while the Code of 1808 was in force, which provided, that the creditors who had not taken the oath, at the meeting, would not be reckoned among the creditors possessing three-fourths of the debt. The court held, that it was not sufficient, that three-fourths of the creditors should assent, but that it should be made to appear by *their oath* that the creditors who have agreed are *bona fide* creditors, and thus, to prevent and defeat collusion, concluding that the proposition required to grant the respite should be three-fourths of the creditors in number and amount. In other words, the court held that the abstaining creditors should not be counted as consenting to the respite.

The provision of the Code of 1808 was modified by the Code of 1825, Art. 3053, which was to the effect that "the forced respite takes place when the creditors do not all agree, for, then, the opinion of *three-fourths* in number and amount prevails over that of the creditors forming the other fourth, and the judge shall approve such opinion, and it shall be binding on the other creditors who did not agree to it."

The case in 8 L. 497 does not appear to have any bearing on the question before us. It merely decides, that *all* the creditors, whether hypothecary or chirographery, on the bilan or not, have a right to vote and to be counted when voting, on an application for respite.

Some eight years after this decision was rendered (1843), the Legislature passed an act amending article 3053, so that the opinion of a *majority* of the creditors in number and amount should prevail in cases of respite. See Act 1843, p. 51.

In the case in 12 An. 520, the question presented was, whether in counting the votes to ascertain the majority in number and amount, those given at the meeting of the creditors were alone to be considered, or whether the majority in number and amount was to be ascertained by reference to those admitted by the debtor upon the bilan: the court, referring to and relying upon the cases in 3 N. S. 446, 504, and 8 L. 467, held, with hesitation, that reference had to be made to the creditors on the bilan also, who, not having voted *for,* should be considered as having voted *against,* the respite. Hence, the defense of *respite granted* set up by Castel, in that case, was overruled and the plaintiff, Rouanet, recovered judgment.

The question presented in that case had never been solved before, and has not since been again submitted. It was one apparently involv-

ing some doubt; but whatever the views entertained at the time were, we cannot now recognize the correctness of the diffident ruling, without obliterating entirely from the Code the provision which declares, that the creditors who do not make the oath prescribed "shall not have the right of voting, and their credits shall not be counted among those by which it is to be determined whether the respite is granted or not. R. C. C. Art. 3087, ₰ 5; Art. 3054 of the Code of 1825.

In 14 An. 30, the Court held that since the statute of 1843, a bare majority of the creditors have the power to grant the respite and thus postpone the payment of the debts of the minority. It does not appear in that case, that the abstaining creditors placed on the bilan were counted at all.

After a survey of the law and jurisprudence, and upon mature deliberation, we conclude that the required majority in number and amount is that of creditors, whether placed on the bilan or not, who have appeared at the meeting, taken the oath prescribed by law, proved their claim and voted for the respite. This majority is indispensably necessary to grant the relief, so as to bind the creditors who have not agreed to it, in other words, who have refused it. Holding differently, would be to recognize in the applicant the power of disqualifying from the right of voting, creditors voluntarily omitted by him from the schedule. The proposition that the abstaining creditors are to be counted as having voted *against* the respite, therefore, lacks foundation, and being implausible, cannot for a moment be countenanced.

5th. The opponents next contend that the laws relative to respite, being part of the insolvent laws of the State, were superseded, abolished and repealed by the passage by Congress of a general bankruptcy law, and have not since been revived or re-enacted.

There is no affinity between respite and surrender laws. They differ essentially. The former rest on the apparent solvency, the latter on the conceded insolvency, of the debtor. In the first case, the property remains in the possession and absolute ownership of the applicant, in the latter, it passes with qualifications to the creditors. 12 An. 182; 3 R. 407; 3 R. 410.

In the case of Rush vs. Creditors, 3 R. 407, this Court held that the respite laws had not been repealed by the Federal bankrupt act. See, also, Bouvier Law Dict. vol. 2, 363; Pothier Obl. vol. 1, No. 88; R. C. C. 3051.

The right of the States to pass a bankrupt law is not extinguished, but merely suspended by the enactment of a general bankrupt law. Such a law merely suspends, without repealing them, State insolvent laws, which revive and continue in force on the repeal of the bankrupt law, and need not, therefore, be re-enacted. 12 B. R. 182; S. C. 43;

Md. 153. The repeal of such law removes the disability created by the Act of Congress. Sturges vs. Crowninshield, 4 Wheat. 122; Bump's Notes on Constitutional Decisions, p. 72–79; Orr & Lindsay vs. Lisso & Scheen, 33 An.

It cannot be claimed that those laws impair the obligations of contracts. They were in force when the relations of debtor and creditors arose between the plaintiff and the opponents, and they are presumed to have contracted in reference to those laws, which, therefore, form part of their contracts or engagements, which having thus been entered into or incurred, must be controlled accordingly, as effectually as if it had been expressly provided that, in case a majority of the debtor's creditors in number and amount were, on his judicial application, to grant him an extension of time, the delay would apply to the claims of all creditors composing the minority.

The obligation of a contract consists in its binding force on the party who makes it. This depends on the laws in existence when it is made, and which are necessarily referred to in all contracts, and form a part of them as the measure of the obligation to perform them by the one party and the right acquired by the other. There can be no other standard by which to ascertain the extent of either, than that the terms of the contract indicate according to their settled legal meaning. 12 Wheat. 213; 4 Wheat. 122; 1 How. 311; 2 How. 508; 3 Mart. 531; 9 Cal. 81; 31 Penn. 175; 6 Otto, 448, 598; 4 Wall. 535; Bump, 120–127.

We find no error in the judgment appealed from.

It is, therefore, affirmed with costs.